# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2018

Lyle W. Cayce
Clerk

No. 17-60307

GRAIN DEALERS MUTUAL INSURANCE COMPANY,

      Plaintiff - Appellee

v.

TAMMY COOLEY, Individually and doing business as Sunrise Trading Post;
WALTER COOLEY, Individually and doing business as Sunrise Trading
Post; SUNRISE TRADING POST, L.L.C.,

      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:16-CV-39

Before KING, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This case stems from an insurance policy on a gas station in Mississippi. The district court held that the policy did not cover claims against the insureds resulting from a leakage of gasoline into a nearby pond. We reverse in part and affirm in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60307

## BACKGROUND

Appellants Tammy and Walter Cooley (the "Cooleys") owned Sunrise Trading Post, LLC ("Sunrise"), a gas station, in Forrest, Mississippi from 2002–2008. The Cooleys insured their operation of Sunrise through business owners' policy No. SBP 516 456 (the "Policy") issued by Grain Dealers Mutual Insurance Company.

In 2008, Pine Belt Oil Company, Inc. ("Pine Belt") purchased Sunrise from the Cooleys. Shortly after the sale, a neighboring property owner notified the Mississippi Department of Environmental Quality ("MDEQ") that gasoline was leaking into a pond on his property. While investigating the leak, the MDEQ sent a letter to Pine Belt requesting an assessment of Sunrise's fuel lines. Pine Belt then forwarded that letter to the Cooleys.

Upon receiving the MDEQ's letter, the Cooleys requested a defense and indemnification from Grain Dealers under the Policy. Grain Dealers responded on November 20, 2008, stating that if the Cooleys were "ordered to take part in the actual clean up, it will not be covered." Nonetheless, Grain Dealers concluded that the Policy did provide a defense. As a result, Grain Dealers hired an attorney to defend the Cooleys in the MDEQ proceedings. Grain Dealers did not, however, offer the Cooleys the opportunity to hire an attorney of their choice.

The MDEQ subsequently concluded that the Cooleys and Pine Belt must remediate the spill site, but made no determination of relative fault. The order stated that if the Cooleys were "aggrieved" by that conclusion they could "request a hearing before the [MDEQ] . . . within 30 days after the date of [the] Order." Neither the Cooleys nor Grain Dealers' hired counsel did so. Nor did Grain Dealers' hired counsel inform the Cooleys of their right to request a hearing. "[T]he MDEQ action remains pending."

2

No. 17-60307

Years later, in 2016, Pine Belt demanded indemnification from the Cooleys for the cost of compliance with the MDEQ order. The Cooleys in turn requested a defense and indemnification from Grain Dealers against Pine Belt's claim. Grain Dealers denied both requests, concluding that the Policy excluded coverage of the Pine Belt suit under a Total Pollution Exclusion clause.

Grain Dealers then filed the instant case, seeking a declaratory judgment that it had no duty to defend or indemnify the Cooleys. The Cooleys counterclaimed, seeking a declaratory judgment that coverage was owed against both the MDEQ claims and the Pine Belt lawsuit.

On January 10, 2017, the Cooleys deposed Grain Dealers' corporate representative. Throughout the deposition, Grain Dealers' counsel objected to a number of questions posed by the Cooleys' counsel. As a result, the Cooleys moved under Rule 30(b)(6) for sanctions, claiming that the objections frustrated the fair examination of the representative. The district court adopted a magistrate judge's order denying sanctions on the grounds that, *inter alia*, though Grain Dealers' counsel "plainly overused the objection," the Cooleys "were able to complete the deposition and obtain sufficiently responsive answers."

The parties then cross-moved for summary judgment. The district court granted summary judgment in favor of Grain Dealers, holding there was no duty to defend or indemnify under the Policy because: (1) the Cooleys could not show that Grain Dealers' failure to provide independent counsel prejudiced the Cooleys; and (2) "gasoline" was a pollutant under the Total Pollution Exclusion. Further, the court concluded that because there was no coverage under the Policy, the Cooleys were not entitled to extracontractual damages.

The Cooleys timely appealed.

3

## DISCUSSION

The Cooleys present four arguments on appeal. Our resolution of the estoppel issue makes it unnecessary to reach two of those issues. Accordingly, we address the Cooleys' arguments that: (1) Grain Dealers is estopped from denying coverage under Mississippi insurance law; and (2) the District Court erred in denying Rule 30(d)(2) sanctions.

**I.     Grain Dealers is estopped from denying coverage.**

The district court held that Grain Dealers was not estopped from denying coverage because the Cooleys could not show prejudice resulting from Grain Dealers' failure to provide independent counsel. The Cooleys argue that this was error, as they sufficiently provided proof of prejudice. We agree.

In Mississippi, "[w]hen an insured under a liability insurance policy is sued, the insurance company is contractually obligated to pay up to the limits of the policy all sums the insured becomes legally obligated to pay." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1068 (Miss. 1996). "Because the insurer must eventually pay whatever sums the insured becomes legally obligated to pay, the insurance carrier has the right to select the attorney retained to defend the claim." *Id.* at 1069.

However, while an insurer "has an absolute duty to defend a complaint which contains allegations covered by the language of the policy; it clearly has no duty to defend a claim outside the coverage of the policy." *Id.* The insurance carrier therefore "has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in event a judgment is rendered against the insured." *Id.* "When defending under [such] a reservation of rights . . . a special obligation is placed upon the insurance carrier." *Id.* Specifically, "the insured [must] be given the opportunity to select his own counsel to defend the claim." *Id.* This obligation to provide independent counsel stems from the fact that "where an insurer asserts either policy or coverage defenses, and

defends its insured under a reservation of rights, there are various conflicts of interest between the insurer and the insured." *Id.* (quoting *CHI of Alaska, Inc. v. Employers Reins. Corp.*, 844 P.2d 1113, 1116 (Alaska 1993)). If the insurer breaches that duty, it "may be estopped from denying liability . . . if its conduct results in prejudice to the insured." *Twin City Fire Ins. Co. v. City of Madison*, 309 F.3d 901, 906 (5th Cir. 2002). This is true even if a policy exclusion would otherwise apply. *Id.*

Grain Dealers provided the Cooleys a defense, yet simultaneously disclaimed coverage if the Cooleys were ordered to clean the spill. In doing so, Grain Dealers failed to inform the Cooleys of their right to hire independent counsel. When the MDEQ ultimately found the Cooleys liable for the spill, Grain Dealers then refused to defend or indemnify the Cooleys against a resulting claim. Under *Moeller* and *Twin City*, if the Cooleys can establish prejudice from Grain Dealers' failure to provide independent counsel, Grain Dealers may not now deny coverage. *See Twin City*, 309 F.3d at 906; *Moeller*, 707 So. 2d at 1069.

The record shows the Cooleys were prejudiced. Specifically, the Cooleys presented evidence that Grain Dealers' attorney never informed them of their right to challenge the MDEQ decision. That right has since lapsed. The loss of the right to challenge the underlying administrative order with the benefit of non-conflicted counsel is clearly prejudicial.

Grain Dealers does not dispute that the Cooleys' counsel failed to inform them of the right to challenge the MDEQ order. Instead, Grain Dealers argues there is no prejudice because the Cooleys received the MDEQ order and should have therefore known of the right to appeal. We are unimpressed with this argument, which ignores the very benefit counsel is to provide. *See* Miss. R. Prof. Conduct 1.4(b) ("A lawyer shall explain a matter to the extent reasonably

necessary to permit the client to make informed decisions regarding the representation.").

Grain Dealers asserts two further arguments to avoid its liability under *Moeller*. Neither has merit.

First, Grain Dealers argues that *Moeller* does not control because Grain Dealers did not defend under a "reservation of rights." The *Moeller* court, however, was concerned with conflicts that occur when an insurer provides a defense "while at the same time reserving the right to deny coverage in event a judgment is rendered against the insured." 707 So. 2d at 1069. We see no relevant distinction between Grain Dealers' outright denial of coverage from the start versus a reservation to later deny coverage. Grain Dealers' refusal to ultimately cover the claim creates the same conflict of interest addressed in *Moeller*.

Second, Grain Dealers claims that "estoppel cannot expand coverage where none exists." We rejected this argument in *Twin City*. *See* 309 F.3d at 906.

Accordingly, Grain Dealers is estopped from denying coverage.[1]

## II.    Cooleys not entitled to sanctions.

The district court found no clear error in the magistrate's conclusion that Grain Dealers' counsel did not unfairly impede completion of the deposition. The Cooleys argue this was an abuse of discretion. We disagree.

---

[1] Based on this determination, we need not reach two of the Cooleys' issues. First, the Cooleys challenge the district court's denial of damages. That denial, however, was based on the court's conclusion that no coverage existed under the Policy. Because we reverse the district court on that issue, we leave consideration of damages to the district court in the first instance. Second, the Cooleys challenge the district court's determination that gasoline is a "pollutant" under the Policy. Grain Dealers' failure to provide independent counsel renders that point meaningless, as Grain Dealers is liable even if the Total Pollution Exclusion would otherwise apply. *See Twin City*, 309 F.3d at 906.

No. 17-60307

"[A] court may impose an appropriate sanction - including the reasonable expenses and attorney's fees incurred by any party - on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). "We review discovery orders for abuse of discretion, including the denial of a motion for discovery sanctions." *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 122 (1st Cir. 2012); *see also Security Nat'l Bank of Sioux City v. Day*, 800 F.3d 936, 941 (8th Cir. 2015).

Upon review of the deposition transcript, we find no abuse of discretion in denying sanctions. The record supports the magistrate's conclusion that "[a]lthough there were a number of unnecessary objections, [Grain Dealers'] counsel did not frustrate the examination of the deponent to such an extent that remedial actions are necessary."

## CONCLUSION

We **REVERSE** the district court's determination that Grain Dealers may deny coverage under the Policy and **AFFIRM** the court's denial of Rule 30 sanctions. We **REMAND** for further proceedings consistent with this opinion.